[No. C051110. Third Dist. May 31, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
BALRAJ SINGH SANGHERA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II of the Discussion.

## COUNSEL

Olaf W. Hedberg for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Stephen G. Herndon and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ROBIE, J.**—Following a bench trial in case No. CRF05-0224, the court found defendant Balraj Singh Sanghera guilty of first degree burglary, petty theft, and possession of stolen property, all of which he committed while on probation in case No. CRF04-2136. The trial court sentenced defendant to an aggregate term of seven years in prison in case No. CRF05-0224, with a concurrent five-year term in case No. CRF04-2136.

On appeal, defendant contends the evidence was insufficient to support the burglary conviction because he did not have the intent required to commit that crime. He also contends the court erred when it declined to grant or reinstate probation. We conclude the evidence was sufficient, and the court did not err in denying probation. Accordingly, we will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2004, in case No. CRF04-2136, defendant pled guilty to one count of transporting cocaine in exchange for sentencing under Proposition 36. As a result, the court placed him on three years' probation with various conditions.

While on probation, defendant was instructed to report to the probation department every Tuesday and Friday for chemical testing and to report to his probation officer by the 10th and 25th of each month. Defendant failed to comply with these instructions after December 16, 2004. Defendant was also instructed to report to mental health for a substance abuse assessment, but he failed to do so.

On January 22, 2005, defendant was helping with a home remodeling project at a house owned by Parmjeet Samra. Samra lent defendant his Corvette to run a 15-minute errand. Defendant never returned.

Two days later, on January 24, Samra reported the incident to the sheriff's department. The car was located later that day, and law enforcement officers began looking for defendant.

That afternoon, Anissa Sumpano returned home to find the doors leading from her backyard into her house open. After flagging down a police officer, Sumpano went into the house and found that her bedroom and her children's bedroom had been ransacked. Sumpano discovered that some clothes were missing, including her daughter's pink slippers. There were also items missing from her purse and her jewelry box. There was mud on the window sill in the kitchen, on the counter, and on the floor. Later on, while cleaning up the house, Sumpano found a pair of shorts under her bed that did not belong to anyone in the house.

Earlier that same day, Sumpano's neighbor, Yannet Rodriguez, returned home to find police everywhere. They told her they were looking for someone who might be in her house. The police searched Rodriguez's house

and found things on her bed that were missing from Sumpano's house. They then found defendant hiding in a closet, wearing some of Rodriguez's clothes and the slippers taken from Sumpano's house. Rodriguez later discovered a sweatshirt that did not belong to her in her hamper. Rodriguez also discovered that $38 was missing from her desk. Officers found that amount of money, along with three crumpled dollars, on defendant when they arrested him.

On January 26, defendant's probation officer filed a declaration alleging defendant had violated the terms of his probation in case No. CRF04-2136. That same day, defendant was charged in case No. CRF05-0224 with first degree burglary, petty theft with a prior, unlawful taking or driving of a vehicle, and possessing stolen property.

Defendant waived his right to a jury trial, and the new criminal charges and the violation of probation were tried together in a court trial in August 2005. Testifying in his own defense, defendant claimed that Samra did not give him a time limit for using the Corvette and that when he entered the two houses on January 24, he did not intend to steal but simply intended to hide from the police. He further claimed he had been up for three days on narcotics at the time.

The trial court found defendant had violated his probation in case No. CRF04-2136 by failing to report for chemical testing, failing to report for a substance abuse assessment, and failing to report to his probation officer, as well as by committing further crimes on January 24, 2005. On the criminal charges in case No. CRF05-0224, the court found defendant guilty of first degree burglary, petty theft, and possession of stolen property. The court acquitted him of unlawful taking or driving of a vehicle.

In a written request and orally at the sentencing hearing in October 2005, defense counsel asked the court to grant defendant probation because he is (or claims to be) a drug addict. Defendant also addressed the court and said he needed "rehab."

The court denied probation, finding that the case was not unusual, and even if it was, the relevant factors weighed against granting probation. The court then sentenced defendant to the upper term of six years for the burglary, with a concurrent six-month term for the petty theft, a concurrent three-year term for the possession of stolen property, and a consecutive one-year term for a prior prison term enhancement.

In case No. CRF04-2136, the court sentenced defendant to the upper term of five years in prison, to run concurrently with his sentence in case No. CRF05-0224.

## DISCUSSION

### I

*Substantial Evidence of Requisite Intent for Burglary*

#### A

*Standard of Review*

■ Defendant contends his burglary conviction cannot stand because it was not supported by substantial evidence that he intended to commit a felony when he entered the two houses. But intent to commit a felony is not absolutely required for a burglary conviction. Intent to commit petty theft is also sufficient to support a burglary conviction. (See Pen. Code, § 459 ["Every person who enters any house . . . with intent to commit grand or *petit larceny* or any felony is guilty of burglary . . . ," italics added].) Here, there was sufficient evidence for the trial court to find that when he entered the two houses, defendant intended to steal clothes to assist in his escape from law enforcement officers. Thus, the burglary conviction stands.

"The standard of review is well settled: On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] ' "[I]f the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." ' [Citation.] 'The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the [finder of fact] to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the [finder of fact], not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt." ' " (*People v. Snow* (2003) 30 Cal.4th 43, 66 [132 Cal.Rptr.2d 271, 65 P.3d 749].)

"An appellate court must accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396 [133 Cal.Rptr.2d 561, 68 P.3d 1].) "Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of fact]." (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429 [180 Cal.Rptr. 391].)

B

*Defendant Failed to Affirmatively Demonstrate Error*

Although the usual formulation of the standard of review, set forth above, could be read to suggest that we will review the record to determine if it contains substantial evidence to support the fact finder's verdict even if the defendant does nothing more than baldly assert that the evidence is insufficient, that is not the case.

■ Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error. (See *People v. $497,590 United States Currency* (1997) 58 Cal.App.4th 145, 152–153 [68 Cal.Rptr.2d 185].) Thus, when a criminal defendant claims on appeal that his conviction was based on insufficient evidence of one or more of the elements of the crime of which he was convicted, we *must* begin with the presumption that the evidence of those elements *was* sufficient, and the defendant bears the burden of convincing us otherwise. To meet that burden, it is not enough for the defendant to simply contend, "without a statement or analysis of the evidence, . . . that the evidence is insufficient to support the judgment[] of conviction." (*People v. Daniels* (1948) 85 Cal.App.2d 182, 185 [192 P.2d 788].) Rather, he must *affirmatively demonstrate* that the evidence is insufficient.

How does a defendant make such a showing? Perhaps the best way to understand that point is to understand how a defendant does *not* make such a showing. He does not show the evidence is insufficient by citing only his own evidence, or by arguing about what evidence is *not* in the record, or by portraying the evidence that is in the record in the light most favorable to himself. It has long been understood in the context of civil appeals, where the burden is likewise on the appellant to demonstrate that the evidence is

insufficient, that "[a] recitation of only [the appellant's] own evidence or a general unsupported denial that any evidence sustains the findings is not the 'demonstration' contemplated under the rule." (*Green v. Green* (1963) 215 Cal.App.2d 31, 35 [30 Cal.Rptr. 30].) It has also long been understood in civil appeals that an appellate court is "not required to search the record to ascertain whether it contains evidence that will sustain [the appellant's] contentions." (*Ibid.*) There is no reason in law or logic that these same principles should not apply in an appeal in a criminal case. These principles are fundamental to the very nature of appellate review, and they must be respected by the criminal defendant who seeks review of his conviction as much as by the appellant in a civil case.

■ Thus, to prevail on a sufficiency of the evidence argument, the defendant must present his case to us consistently with the substantial evidence standard of review. That is, the defendant must set forth in his opening brief *all* of the material evidence on the disputed elements of the crime in the light most favorable to the People, and then must persuade us that evidence cannot reasonably support the jury's verdict. (See *People v. Dougherty* (1982) 138 Cal.App.3d 278, 282 [188 Cal.Rptr. 123].) If the defendant fails to present us with all the relevant evidence, or fails to present that evidence in the light most favorable to the People, then he cannot carry his burden of showing the evidence was insufficient because support for the jury's verdict may lie in the evidence he ignores.

Such is often the case in criminal appeals, and such is the case here. Although defendant summarizes the testimony of most of the witnesses in the statement of facts in his opening brief, when it comes to arguing the sufficiency of the evidence, he sets forth only his own testimony. He then boldly claims, "the only evidence of [his] intent upon entry of either house is a desire to avoid arrest."

■ Contrary to what he claims, defendant's self-serving testimony was not the only evidence of his intent when he entered the houses. "Because intent is rarely susceptible of direct proof, it may be inferred from all the facts and circumstances disclosed by the evidence. [Citations.] Whether the entry was accompanied by the requisite intent is a question of fact for the [fact finder]. [Citation.] 'Where the facts and circumstances of a particular case and the conduct of the defendant reasonably indicate his purpose in entering the premises is to commit larceny or any felony, the conviction may not be disturbed on appeal.' " (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245 [75 Cal.Rptr.2d 40].)

Defendant acknowledges this rule of law, but asserts that "[t]he only reasonable inference [here] is that [he] had no intent to steal when he entered the houses . . . and once inside spastically grabbed whatever he encountered in his drug-addled attempt at evading the police." We disagree. The facts and circumstances of this case and defendant's conduct reasonably indicate that his purpose in entering the two houses was to steal clothes to assist in his escape from law enforcement officers. Although it is hypothetically *possible* defendant formed the intent to take the clothes after he entered the houses, the trial court was not bound to find that was the case, and indeed the court was more than justified in concluding, beyond a reasonable doubt, that defendant already intended to steal clothes at the time he entered both houses.

According to defendant's own evidence, he fled from the police on a "chilly" day wearing nothing but a pair of shorts. Defendant himself admitted that once inside the first house he "tried to look for some clothes so [he] could disguise [him]self." He looked for men's clothes but could not find any, so he took off his shorts and put on some women's clothes, as well as "the little kid's slippers." He then went to the second house, where he found a sweat suit that he preferred to the pants he had taken from the first house because the pants "looked hella funny on [him], all tight." He changed his clothes, and then hid in the closet.

The foregoing reveals that even defendant's own testimony does not support the assertion that he "spastically grabbed whatever he encountered in his drug-addled attempt at evading the police." Instead, it supports the conclusion that he knowingly and willfully entered the first house with the intent to abandon his shorts in favor of some other clothing, preferably men's clothing, and when he failed to find that, he dressed himself in what he could find that fit and went to the second house looking for something better. Under these circumstances, defendant's entry into *both* houses constituted burglary, and therefore his burglary conviction is supported by substantial evidence.

## II

### *Denial of Probation**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1567.

## DISPOSITION

The judgment is affirmed.

Morrison, Acting P. J., and Butz, J., concurred.