Filed 1/26/24  P. v. Castaneda CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESUS ZAVALA CASTANEDA,<br><br>    Defendant and Appellant. | 2d Crim. No. B328158<br>(Super. Ct. No. 2020016395)<br>(Ventura County) |

Jesus Zavala Castaneda[1] appeals from the judgment after a jury convicted him of committing two counts of lewd acts on a child under the age of 14 (Pen. Code,[2] § 288, subd. (a)) and found true allegations that the victim, V.M., was particularly

---

[1] We note that appellant's last name is spelled "Castaneda" in the record and the parties' briefs and "Casteneda" in the abstract of judgment.

[2] Unlabeled statutory references are to the Penal Code.

vulnerable (Cal. Rules of Court, rule 4.421(a)(3)) and that Castaneda took advantage of a position of trust or confidence to commit his crimes (*id.*, rule 4.421(a)(11)). The trial court sentenced him to eight years in state prison.

Castaneda contends: (1) the prosecutor's closing argument was deceptive, (2) there was insufficient evidence that count 1 occurred on a specific date, and (3) the trial court erred in instructing the jury with CALCRIM No. 1193 regarding child sexual abuse accommodation syndrome (CSAAS). We affirm.

FACTS AND PROCEDURAL HISTORY
*Molestation of V.M.*

V.M. is Castaneda's niece. She and her mother, M.C., lived with Castaneda until December 2018, when V.M. was in the seventh grade. After they moved, M.C. would drop V.M. off at Castaneda's house so she could take the bus to school.

In June 2019, Castaneda molested V.M. while she was taking a morning nap. Castaneda came into the room she was sleeping in, rubbed her feet, and moved his hand up her leg towards her hips. He then moved his hand under her shirt, massaged her breast, and started moaning. He looked at V.M.'s crotch and asked her if she wanted him to touch her vagina. V.M. declined. Castaneda had asked V.M. if she wanted him to get food for her. V.M. said yes and waited for Castaneda to return with it. Castaneda told V.M. not to tell anyone and that he wouldn't do it again.

V.M. said that Castaneda had massaged her breasts prior to June 2019. She testified that Castaneda's massages "would start with [her] back and . . . go under [her] shirt. He would . . . pass his hand through [her] bra strap . . . and then . . . would flip [her] around and massage . . . [her] stomach and . . . breasts."

2

*CSAAS expert*

The prosecution's expert, Dr. Lauren Maltby, testified that CSAAS provides a framework to help understand the behaviors of child abuse victims. These behaviors include accommodation, including spending time with the abuser and relying on them to meet certain needs, and delayed disclosure. Dr. Maltby did not interview V.M. or any witnesses or attorneys about the facts of this case, nor did she review any police reports. She said CSAAS "should not be used as a way to measure or determine if a child has been sexually abused."

*Verdict and sentencing*

The jury convicted Castaneda of both counts of lewd acts, concluding that he committed count 1 between November 1, 2018, and June 12, 2019, and that he committed count 2 between June 1 and 12, 2019. The jury also found true that V.M. was particularly vulnerable and that Castaneda took advantage of a position of trust or confidence to commit his crimes. The trial court sentenced him to eight years in state prison (the middle term of six years for count 1, plus a consecutive two years for count 2).

DISCUSSION

*Prosecutor's statements during closing argument*

Castaneda first contends the prosecutor made deceptive statements in his closing argument regarding CSAAS. He claims the prosecutor "boldly asserted" V.M. was a victim of sexual abuse because she acted consistent with CSAAS. The Attorney General counters that Castaneda forfeited this contention by not objecting during the trial court proceedings. We agree with the Attorney General.

" ' " ' "No procedural principle is more familiar to this [c]ourt than that a constitutional right," or a right of any other

3

sort, "may be forfeited in criminal as well as civil cases by the failure to make [a] timely assertion of the right before a tribunal having jurisdiction to determine it." ' " ' " (*People v. Harrison* (2013) 57 Cal.4th 1211, 1229.) " 'To preserve such a claim for appeal, "a criminal defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the impropriety." ' [Citation.] The lack of a timely objection and request for admonition will be excused only if either would have been futile or if an admonition would not have cured the harm. [Citation.]" (*People v. Powell* (2018) 6 Cal.5th 136, 171 (*Powell*).)

Here, Castaneda did not object to any portion of the prosecutor's closing argument. Nor has he shown that it would have been futile to object. His failure to do so forfeits the issue on appeal. (*Powell*, *supra*, 6 Cal.5th at p. 171; *People v. Seumanu* (2015) 61 Cal.4th 1293, 1328, fn. 7.)

Castaneda also forfeited his contention by failing to comply with applicable rules of appellate procedure. "[A]n appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test [their] claim. The appellant must present an adequate argument[,] including citations to supporting authorities and to relevant portions of the record." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557.) This is because "the judgment challenged on appeal is presumed correct," requiring an appellant "to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) The California Rules of Court thus require appellate briefs to "[s]tate each point . . . and support each point by argument and, if possible, by citation of authority" and to "[s]upport any reference to a matter in the record by a

4

citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).) Because he does not cite the record and his briefs are replete with unsupported legal and factual assertions, Castaneda has further forfeited his contention challenging the prosecutor's closing argument.

*Date of offense for count 1*

Castaneda next argues count 1 should be reversed because there was insufficient evidence the offense occurred on a specific date. He claims V.M. could not remember the specific incidents of sexual abuse before the June 2019 incident. The Attorney General maintains the prosecution need not establish the exact date of the offense. The Attorney General is correct.

"The precise time at which the offense was committed need not be stated in the accusatory pleading, but it may be alleged to have been committed at any time before the finding or filing thereof, except where the time is a material ingredient in the offense." (§ 955.) " 'The law is clear that, when it is charged that an offense was committed "on or about" a named date, the exact date need not be proved unless the time "is a material ingredient in the offense" [citation], and the evidence is not insufficient merely because it shows that the offense was committed on another date.' [Citations.]" (*People v. Garcia* (2016) 247 Cal.App.4th 1013, 1022.) One exception is for evidence of an alibi defense, which requires proof of an exact date for an offense. (*People v. Barney* (1983) 143 Cal.App.3d 490, 497.)

Here, count 1 alleged Castaneda committed a lewd act on V.M. between November 2018 and June 2019. Because Castaneda did not raise a defense of alibi or lack of opportunity (*People v. Rojas* (2015) 237 Cal.App.4th 1298, 1304), the specific

5

date of that offense was not a "material ingredient" (§ 955). The prosecutor thus did not have to establish the exact date of the offense. Moreover, the jury instructions and corresponding verdict forms were clear that count 1 was based on conduct alleged to have occurred before June 2019. We presume the jury understood the instructions. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 107 (*Coffman and Marlow*).)

Substantial evidence also supports the jury's finding that the conduct underlying count 1 occurred before June 2019. V.M. testified that the conduct underlying count 2 occurred in June 2019, after she and her mother moved out of Castaneda's home. She also testified that Castaneda massaged her breasts other times before June 2019. That is consistent with count 1 occurring between November 2018 and June 2019. We thus conclude a rational trier of fact could find Castaneda guilty of count 1. (*People v. Jones* (1990) 51 Cal.3d 294, 314.)

### *CALCRIM No. 1193*

The trial court instructed jurors pursuant to CALCRIM No. 1193: "You have heard testimony from Dr. Lauren Maltby. [¶] . . . [¶] Dr. Lauren Maltby's testimony about [CSAAS] is not evidence that [Castaneda] committed any of the crimes charged against him. [¶] . . . [¶] You may consider this evidence only in deciding whether or not [V.M.'s] conduct was consistent with the conduct of someone who has been molested, and in evaluating [her] believability."

On appeal, Castaneda challenges the trial court's use of CALCRIM No. 1193, contending it allowed testimony regarding CSAAS to be used as proof he molested V.M. Our division has previously rejected similar arguments regarding this instruction (see, e.g., *People v. Munch* (2020) 52 Cal.App.5th 464, 473-474;

6

*People v. Gonzales* (2017) 16 Cal.App.5th 494, 504), and we do so again given Castaneda's attack on V.M.'s credibility. During closing, for example, Castaneda argued that V.M.'s failure to report the abuse to her mother was "significant." He also argued it was incredulous for V.M. to be abused and then accept food from him.

The instruction was also proper. Dr. Maltby testified that she had no knowledge about the facts of this case and that CSAAS could not be used to prove Castaneda's guilt. And the trial court instructed jurors that they "alone must judge the credibility or believability of the witnesses" and that they could "disregard any [expert] opinion that [they found] unbelievable, unreasonable, or unsupported by the evidence." (See CALCRIM Nos. 105, 332.) Again, we presume the jury understood and followed these instructions. (*Coffman and Marlow*, *supra*, 34 Cal.4th at p. 107.) There was no error. DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.

CODY, J.

7

Anthony J. Sabo, Judge

Superior Court County of Ventura

_____

Nancy J. Mazza for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.